UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MELISSA MARIE DAY, | ) |
|     *Plaintiff*, | ) |
| v. | ) Case No: 2:20-cv-249 |
| KILOLO KIJAKAZI, | ) Judge Christopher H. Steger |
| Acting Commissioner of Social Security Administration, | ) |
|     *Defendant*. | ) |

**MEMORANDUM OPINION**

**I.      Introduction**

Plaintiff Melissa Marie Day seeks judicial review under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), from her denial of disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration under Titles II and XVI of the Act, 42 U.S.C. §§ 401-34, 1381-83f. [*See* Doc. 1]. The parties consented to the entry of final judgment by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c), with a right of direct appeal to the Court of Appeals for the Sixth Circuit. [Doc. 22].

For the reasons that follow, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 29] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 34] will be **GRANTED**, and judgment will be entered **AFFIRMING** the Commissioner's decision.

**II.     Procedural History**

On November 8, 2017, Plaintiff applied for disability insurance benefits, alleging disability as of January 1, 2015. (Tr. 75). Plaintiff's claims were denied initially as well as on reconsideration. (Tr. 22). As a result, Plaintiff requested a hearing before an administrative law judge. *Id.*

At a hearing on December 2, 2019, that included Plaintiff's attorneys, Plaintiff amended the alleged onset date to November 8, 2017. *Id.* Administrative Law Judge Randi Lappin (the "ALJ") heard testimony from Plaintiff and a vocational expert. (Tr. 22, 36). The ALJ then rendered her decision on April 8, 2020, finding that Plaintiff was "not disabled" as defined by the Act. (Tr. 36).

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial; but that request was denied. (Tr. 1). Exhausting her administrative remedies, Plaintiff then filed her Complaint [Doc. 1] on November 9, 2020, seeking judicial review of the Commissioner's final decision under § 405(g). The parties filed competing dispositive motions, and this matter is ripe for adjudication.

### III. Findings by the ALJ

The ALJ made the following findings concerning Plaintiff's application for benefits:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since November 8, 2017, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar degenerative disc disease and degenerative joint disease, bilateral carpal tunnel syndrome, chronic obstructive pulmonary disease ("COPD") with chronic bronchitis, cardiac arrhythmia, pelvic adhesive disease, and obesity (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1[1] (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift, carry, push, and pull up to 5 pounds frequently and up to 10 pounds occasionally. She can sit for about 6 hours

---

[1] Commonly referred to as, and hereinafter, "The Listings."

out of an 8-hour workday, as well as stand and/or walk for a combined cumulative total of up to about 2 hours out of an 8-hour workday. She can sit without interruption for no more than about 30 minutes, followed by an opportunity to stand and stretch briefly (1 to 2 minutes), without leaving the work station and remaining on task; she can stand and/or walk without interruption for a combined uninterrupted total of no more than about 15 minutes, followed by an opportunity to sit for up to 5 minutes, while remaining on task. The claimant can occasionally balance, stoop, crouch, kneel, crawl and climb ramps and stairs, but she can never climb ladders, ropes or scaffolds. The claimant can reach overhead occasionally and in all other directions frequently, bilaterally. She can handle, finger, feel and operate hand controls frequently, bilaterally. The claimant can tolerate no more than occasional exposure to extreme temperatures or respiratory irritants, and can never use vibrating hand tools.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on June 15, 1971, and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Pt. 404, Subpt. P, App. 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined by the Social Security Act, from November 8, 2017, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

(Tr. at 25-36).

## IV. Standard of Review

This case involves an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). An individual qualifies for DIB if they: (1) are insured for DIB; (2) have not reached the age of retirement; (3) have filed an application for DIB; and (4) are disabled. 42 U.S.C. § 423(a)(1). An individual qualifies for SSI if they: (1) are aged, blind, or disabled; and (2) have income and resources that do not exceed specific limits. 42 U.S.C. § 1382(a). The definition of disabled is the same for DIB and SSI. *Compare* 42 U.S.C. § 423(d) *with* § 1382(a)(3).

The determination of disability is an administrative decision. To establish a disability, plaintiffs must show that they are unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The following five issues are addressed in order: (1) if a claimant is engaging in substantial gainful activity, they are not disabled; (2) if a claimant does not have a severe impairment, they are not disabled; (3) if the claimant's impairment meets or equals a listed impairment, they are disabled; (4) if the claimant is capable of returning to work they have done in the past, they are not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy, they are not disabled. *Id.* If, at one step, an ALJ makes a dispositive finding, the inquiry ends without proceeding to the next. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that they cannot return

to their former occupation, then the burden shifts to the Commissioner to show that there is work in the national economy that the claimant can perform considering their age, education, and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review is whether substantial evidence supports the Commissioner's findings and whether the Commissioner made any legal errors in the process of reaching their decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is contrary evidence, the Commissioner's findings must be affirmed if evidence exists to support the Commissioner's findings. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). Courts may not reweigh the evidence and substitute their judgment for that of the Commissioner because substantial evidence exists to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes a "zone of choice" within which decision-makers can go either way without court interference. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

Courts may consider any evidence in the record, regardless of whether the ALJ cited to it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). But courts may not consider evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Courts are also not obligated to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. August 18, 2009) (stating that assignments of error not made by claimant were waived). Further, "issues [that] are 'adverted to in

a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

## V.     Analysis

Plaintiff argues that the ALJ failed to assess Plaintiff's fibromyalgia at Step Two in accordance with Social Security Ruling ("SSR") 12-2p. Plaintiff also claims that the ALJ failed to meet her Step Five burden to prove Plaintiff can perform other work that exists in significant numbers in the national economy. The Court will address the issues in turn.

### A.     The ALJ's assessment of fibromyalgia at Step Two

Plaintiff's initial issue is that the ALJ erred in her analysis regarding SSR 12-2p II.B. [Doc. 30 at 5-6]. Plaintiff claims that she meets the criteria for having the medically determinable impairment of fibromyalgia despite the ALJ stating that "the evidence does not indicate documentation of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions." *Id.* at 6 (quoting Tr. 25-26). Plaintiff points to evidence that she matches more than six of the listed criteria, including headache, fatigue, weakness, unspecified fever, depression, anxiety disorder, gastroesophageal reflux disease ("GERD"), wheezing, shortness of breath, insomnia, migraine headaches, heartburn, numbness and tingling, joint pain, muscle aches, chest pain, and nausea. *Id.* Plaintiff also contends she meets the SSR 12-2p II.B. requirement of a history of widespread pain. *Id.*

SSR 12-2p II. states that a claimant can show they have fibromyalgia if (1) it is diagnosed by a physician, (2) the physician provides the evidence described in section II.B., and (3) the diagnosis is not inconsistent with the other evidence in the case record. SSR 12-2p II.B. states that what the physician must show is (1) a history of widespread pain, (2) repeated manifestations of

six or more fibromyalgia symptoms, signs, or co-occurring conditions, and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.

The only medical record from Plaintiff that addresses fibromyalgia is from an August 28, 2019 appointment with Dr. Lori Church. Dr. Church noted under "Assessment" that fibromyalgia was a new assessment; under "Examination" she noted tenderness to palpation in fewer than six locations. No further information regarding fibromyalgia was included in the August 28, 2019, record. In the medical record from a September 30, 2019, appointment with Dr. Church, fibromyalgia was no longer listed under "Assessment," even though other medical assessments from previous visits remained in that section.

While Plaintiff strongly asserts that she meets the "history of widespread pain" and "repeated manifestations" criteria, she entirely ignores the third requirement – evidence that other disorders were excluded as causing the repeated manifestations. Because Dr. Church did not provide evidence that other causal disorders were excluded, the ALJ properly excluded fibromyalgia in the Step Two analysis. Further, a review of the record reveals that Plaintiff's symptoms, signs, and co-occurring conditions frequently appear more likely to have been caused by other disorders. For example, records from November 28, 2017, show Plaintiff had "headaches, fatigue, and body aches." (Tr. 480). But Plaintiff was diagnosed with sinusitis because she also had "cough, cold symptoms, fever, nasal congestion, runny nose, sore throat, sinus tenderness, [and] sinus drainage. *Id.* Plus, Plaintiff's reported that all these symptoms "began 1 week ago." *Id.* Similarly, records from October 16, 2018, show wheezing on examination. (Tr. 735-39). However, Dr. Church's assessment attributes this to COPD. *Id.* These are two examples are merely illustrative, not exhaustive. Ultimately, a thorough and systematic elimination of other causes for

signs, symptoms, and co-occurring conditions is needed to make a worthwhile determination regarding fibromyalgia, which is why one is required by SSR 12-2p.

Therefore, even if the ALJ erred in her evaluation of the "repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions"—which has not been decided one way or another here—such error would be harmless because substantial evidence supports the ALJ's conclusion that fibromyalgia was not properly established as a medically determinable impairment for purposes of Step Two.

**B.     Ability to perform other work that exists in significant numbers**

At Step Five, the ALJ identified three jobs as existing in significant numbers in the national economy that Plaintiff could still perform. (Tr. 24, 34-36). Plaintiff asserts errors related to these three jobs—appointment clerk, addresser, and document preparer. [Doc. 30 at 8-10].

In contesting the job of appointment clerk, Plaintiff contends that the ALJ did not make required findings in her written decision that Plaintiff had the skills necessary to perform the job. *Id.* at 9. The relevant SSR states:

> Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work, and that work has been determined to be skilled or semiskilled. . . . When the issues of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision.

SSR 82-41.

The ALJ found that Plaintiff's impairments are severe (Tr. 25), do not meet or equal the relevant criteria in The Listings (Tr. 28), but do prevent the performance of past relevant work (Tr. 34). Additionally, the vocational expert identified the job of appointment clerk as being semiskilled. (Tr. 64). Therefore, Plaintiff is correct that the ALJ was required to make certain findings of fact that the ALJ did not include in her written decision. *Compare* SSR 82-41 Topic 6

*with* (Tr. 34-36). As such, the job of appointment clerk provides no support for the ALJ's conclusion that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

Regarding the jobs of addresser and document preparer, Plaintiff points to cases from various jurisdictions finding these jobs to be obsolete. [Doc. 30 at 10]. Additionally, she claims that the Social Security Administration's own 2011 study affirms that the job of addresser "does not currently exist in significant numbers in the national economy." *Id.*

Regarding the decisions of other courts, the Court notes the persuasive nature of the cases from district courts outside the Sixth Circuit. However, the Court is bound by Sixth Circuit precedent. First, the Sixth Circuit case cited by Plaintiff does not wholly support her claim of obsolescence. In *Cunningham v. Astrue*, the Sixth Circuit remanded a case to the Commissioner of the Social Security Administration for a determination of whether substantial evidence supported the finding that a significant number of document preparer jobs existed in the national economy. 360 F. App'x 606, 616 (6th Cir. 2010). No finding of obsolescence was entered. Second, the Sixth Circuit has limited the application of *Cunningham* through two subsequent cases—*Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847 (6th Cir. 2010) and *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313 (6th Cir. 2020). *Kyle* and *O'Neal* make clear that an "ALJ can rely on the DOT to establish that work exists in the national economy." *O'Neal*, 799 F. App'x at 317. Further, "an ALJ can rely on vocational evidence provided by a vocational expert [if] the ALJ [verifies] that the evidence does not conflict with the information in the DOT." *Id.* Since the ALJ made such a verification here (Tr. 67), her findings regarding the jobs of addresser and document preparer are proper. *See O'Neal*, 799 F. App'x at 317-18. Therefore, substantial evidence supports the ALJ's finding regarding Plaintiff's ability to perform work that exists in significant numbers in the

national economy.

The Court notes, however, the plain common sense[2] reflected in Plaintiff's argument regarding the Social Security Administration's 2011 study and the persuasiveness of her obsolescence argument generally. Since the Court is bound by Sixth Circuit precedent, it would point out the importance of cross-examining the vocational expert as discussed in *O'Neal*. 799 F. App'x at 318.

## VI. Conclusion

Having reviewed the administrative record and the parties' briefs, Plaintiff's Motion for Judgment on the Administrative Record [Doc. 29] will be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 34] will be **GRANTED**, and the decision of the ALJ is **AFFIRMED**. Judgment will be entered in favor of the Commissioner.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiff's characterization of the 2011 study is stronger than the Court's own assessment, but the Court acknowledges that Plaintiff is raising a point that seems rational and persuasive.